1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------x
                                        10-CR-019(RJD)
UNITED STATES OF AMERICA,

                                        United States Courthouse
        Plaintiff,                      Brooklyn, New York

        -against-                       December 14, 2018
                                        10:00 a.m.
ZAREIN AHMEDZAY,

          Defendant.

-------------------------------x

            TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
              BEFORE THE HONORABLE RAYMOND J. DEARIE
               UNITED STATES SENIOR DISTRICT JUDGE


APPEARANCES

For the Government:         UNITED STATES ATTORNEY'S OFFICE
                            Eastern District of New York
                            271 Cadman Plaza East
                            Brooklyn, New York 11201
                            BY:  DOUGLAS M. PRAVDA
                            Assistant United States Attorney


For the Defendant:          MICHAEL ANTHONY MARINACCIO
                            245 Main Street
                            Suite 420
                            White Plains, NY 10601
                            BY:  MICHAEL ANTHONY MARINACCIO, ESQ.



Court Reporter:             LINDA D. DANELCZYK, RPR, CSR, CCR
                            Phone:  718-613-2330
                            Fax:    718-804-2712
                            Email:  LindaDan226@gmail.com



Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                    2

(In open court.)

THE COURTROOM DEPUTY:  I'm going to ask counsel please to come up to the podium.

Counsel, we are on this morning for a sentence. This is U.S.A. versus Zarein Ahmedzay -- I'm sure if I mispronounced your name.

THE DEFENDANT:  Ah-me-za.

THE COURTROOM DEPUTY:  Thank you.

Docket Number 10-CR-00019, and we are on Superseder I.

Can I ask the attorneys please to note their appearance beginning with counsel for the government.

MR. PRAVDA:  Good morning, Your Honor.  Doug Pravda for the United States.  Next to me I have from the Probation Department Shayna Bryant and Carrie Borona.

And at counsel table, Your Honor, is special agent Farbod Azad from the Federal Bureau of Investigation.

THE COURT:  Good morning, all.

MR. MARINACCIO:  Michael Marinaccio for Mr. Ahmedzay, Your Honor.  Mr. Ahmedzay is here before the Court.

THE COURT:  Mr. Ahmedzay, good morning.

All right, are we ready to proceed, Mr. Marinaccio?

MR. MARINACCIO:  Yes, Your Honor.

THE COURT:  Mr. Ahmedzay, have you had an adequate

opportunity, sir, to carefully read your presentence report and the other submissions of counsel?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have you had sufficient time to confer with your attorney?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you feel prepared to proceed to sentence this morning?

THE DEFENDANT:  Yes.

THE COURT:  You have the right to address the Court before sentence is imposed.  I will give you the opportunity to do that in just a few minutes, feel free to say anything you think is appropriate before I finalize my judgment in the case.  You understand?

THE DEFENDANT:  Thank you.

THE COURT:  For the benefit of counsel, my file reflects the presentence report dated August 6th.  There is a confidential addendum to the report, which I take it all counsel have seen.

MR. MARINACCIO:  Yes.

THE COURT:  I have a cooperation -- the parties' cooperation agreement.

I have the transcript of the plea before Judge Gold, which I have accepted.  My prior order of May 12th, 2010.

And I have the submissions of counsel,

PROCEEDINGS                              4

Mr. Marinaccio's letter of November 29th with exhibits which I've read, including Mr. Ahmedzay's letter to the Court.  I have Mr. Marinaccio's followup of December 11.  I have from the government initially filed by letter dated December 6th, 5K1 application, and more recently, just this morning, I had occasion to read the government's letter of December 14th today.

Have you had a chance to see that, Mr. Marinaccio?

MR. MARINACCIO:  I've seen them all, yes, Judge.

THE COURT:  Okay.  I have also reviewed the minutes of the transcript of the trial testimony that Mr. Ahmedzay gave in this Court in the trial of United States against Naseer.

For your information, given the gravity of the case, I have, as is our practice, conferred with three of my colleagues in anticipation of today's sentence and received their comments and recommendations.

And, preliminarily, I think that's it in the file and other document.  If I'm missing something, by all means let me know.  Counsel?

MR. PRAVDA:  No, you have everything, Your Honor.

THE COURT:  All right.

MR. MARINACCIO:  None from the defense, Your Honor.

THE COURT:  All right.  Mr. Marinaccio, all yours.

MR. MARINACCIO:  Your Honor, I met Mr. Ahmedzay nine

years ago, back in January of 2010, and I can honestly say that the man that stands before you today is not the man that I met back in January of 2010.  The conversations that I've had with Mr. Ahmedzay over the last several years are not the same type of conversations that we had with him -- that I had with him back in January, February, March of 2010.

I, of course, support the government's 5K application in which they describe his substantial assistance with the government as extraordinary critical intelligence, providing unique insight all in the face of substantial potential danger to himself and his family.  And also that he continues -- or the information and the intelligence that he provided continues to contribute to law enforcement investigations related to national security.

When Mr. Ahmedzay first decided to plead guilty and to cooperate with the government, we had about four proffer sessions with the government; some down here, and some up in White Plains.  And, you know, I remember talking to the AUSAs that were handling the matter at the time saying to them, and to the agents, you know, because we all knew, we all knew that the plea that he was going to take and that he ultimately did take, you know, carried life in prison.  And the question that I had of them at the time was, you know, what could Mr. Ahmedzay possibly do to earn this Court, society's trust, leniency and consideration when that time comes, and we didn't

PROCEEDINGS                                          6

know when that time would come that he would be called before the Court for sentencing.

And, you know, from the outset, Judge, and I have to give a tremendous kudos to law enforcement.  You know, I sat in on those proffer sessions, and I knew what Mr. Ahmedzay was talking about was important, but I didn't know the full extent of how important it was.  But the agents knew.  And I think it's reflected in the 5K1 application.

So I'm going to suggest, Judge, and you know there was a period of time that my only contact with Mr. Ahmedzay was an occasional phone call just to say hello, keep me updated, let me know, you know, how he was doing; or I would ask the government to please contact my client, let him know that I haven't forgotten about him, that his file is right up there in my office and I wanted him to know that there would come a point when we would have more frequent contact towards the end, and we have had that contact.

And one of the first face-to-face contacts that we had following this period of cooperation was back in September of 2017, and I referred to it in my submission when I talk about the statement that he made to me that indicated that he was a changed person, that he loathes the person that he once was but he was not that person.  And this is something that came to him, he didn't express it, but came to him while he was being cross-examined at one of the trials.

And I actually had written down, I found my notes and I wrote down what he had said that he was thinking as he was being cross-examined, and the quote was, to me:  If you want me to look bad, he's thinking to himself that he was going -- that he would say to the defense attorney -- if you want me to look bad, I can help you out, because I don't like that person that you're talking about, and that person does not like me.

And, you know, I thought it was a really important revelation from him and a moment of self-reflexion.  And I thought to myself and I expressed to Zarein that he did all that he could do to make things right.  And he did all that was asked of him to try to make things right.

And most importantly, over the course of these past nine years, he's worked with numerous assistant United States attorneys, agents, and a number of law enforcement agencies, foreign and domestic.  And he's done everything that was asked of him.  But the most important is he was, and he is, grateful to have been given the opportunity to do so.  And that's why I think that he's a different person today.

It was a process.  It took time over a number of years, but he's a different person today than he was back in January of 2010, and even before during the course of the crime, the terrible crime that he was involved with that brought him before and brings him before this Court.

The other thing that I would like to mention, and I know it's very hard in the context such as this because these are serious charges, and I point that out in my submission. But I think it's important that I make some effort to humanize Zarein. He's a kid from Queens. He's a son. He's a brother. He's a husband. He's a father. He's a sports fan. He hopes to continue his education. He hopes to be able to go into business. He hopes to be able to teach. And he hopes to be able to continue the work that he's been doing these last nine years in educating and dissuading any individuals who may think that the destructive and damaging path that he had taken at one point might be the path for them.

So I think that the body of the information that the Court has in front of it is one of a person who has found redemption. He has changed. And I think it's one who deserves the Court's consideration.

I've asked in my submission for the Court to sentence my client to the period of time that he has already served. I renew that application. I think that if the Court gives my client that opportunity, that opportunity to become a contributing member of society, to help his family, to help himself, I don't think the Court will be disappointed, Judge.

THE COURT: Mr. Pravda.

MR. PRAVDA: Thank you, Your Honor. I will be relatively brief because I think we filed a very, very

comprehensive submission, and I know that the Court has given very careful consideration to that and I don't want to repeat everything that I put in there.

Let me just say a word about the defendant's crimes. Just because I think they deserve some kind of acknowledgment, some recognition of what he did and how serious that was, and certainly there's no dispute about how serious that was; because the defendant, together with two co-cooperators, Najibullah Zazi and Adis Medunjanin, grew up in Queens and they radicalized and they traveled to Pakistan intending to join the Taliban and fight against the U.S. posted in Afghanistan.

Instead, they wound up joining al-Qaeda where they underwent military weapons training with al-Qaeda; where they interacted with very-high ranking external operation figures within al-Qaeda who convinced them instead of fighting in Afghanistan to come back to New York and to conduct a terrorist attack here.

They ultimately agreed to do that, and they came back here and they planned to conduct the suicide attack on the New York subway system.  That was thwarted by the efforts of law enforcement.

And but for the fact of the defendant's cooperation, we would be here today asking for a very substantial sentence, Your Honor.  But to his credit, Mr. Ahmedzay did cooperate,

and that cooperation was extraordinary, as I described in the government's 5K letter.

Over the last eight-and-a-half years, the defendant has been interviewed by prosecutors, by agents, more than a hundred times.  He's reviewed countless photos.  He's provided critical intelligence about al-Qaeda; both about its internal workings, and about its external operation and planning.  All of this information that he's provided has been incredibly value to the U.S. Government, and also to its foreign partners.

Obviously I've given much more specifics in the 5K letter that I'm not going to repeat here, but he testified, Your Honor, at three separate trials here in the Eastern District of New York.

Your Honor, mentioned the Naseer trial which, of course, Your Honor presided over, and so you're quite familiar with that testimony.  In addition, he testified in April of 2012 in front of Judge Gleeson against his codefendant, Medunjanin.  I say a codefendant, but also his friend.  And he provided very compelling testimony in that trial as to Medunjanin's involvement in the plot to blow up the subway system.  The jury convicted on all counts and Judge Gleeson sentenced Medunjanin to life in prison.

Then, as we mentioned, he testified in the Naseer trial in March of 2015.  And then he testified again, Your

Honor, in September of 2017 against Muhanad Al Farekh in front of Judge Cogan. And Al Farekh was a U.S. citizen, who, like the defendant, had traveled with two others to Pakistan and joined al-Qaeda. And Al Farekh participated in an attack on a U.S. Army base in Afghanistan in January of 2009.

And even now Ahmedzay did not know Al Farekh and did not inculpate him in anything, he provided critical testimony. And the reason is that when Al Farekh traveled to Pakistan from Canada, he traveled with two other individuals, one of whom was a Canadian citizen named Ferid Imam.

Ferid Imam was Ahmedzay's military weapons trainer when Ahmedzay took military weapon training with al-Qaeda in Pakistan in 2009. So he was able to identify who Ferid Imam was. He didn't know him by that name, but he identified his picture; described who he was and provided very critical evidence as corroborating that.

Fared Imam was a westerner that he's been in Pakistan for approximately a year, which was the amount of time that had passed since Farekh and Imam had traveled to Pakistan.

Ahmedzay also provided critical information on an individual named Abdel Aziz, who was then the head of al-Qaeda's external operations and was somebody whom Al Farekh worked very closely with. And the government was able to offer other evidence of Al Farekh's direct work with Abdel

PROCEEDINGS 12

Aziz, and the defendant was able to corroborate that information in his testimony by talking about who Abdel Aziz was and his significance to al-Qaeda's external operation planning.

So in addition to the intelligence and the law enforcement information that the Ahmedzay provided, which continues to benefit the government and law enforcement today, his testimony at three trials led to convictions of individuals who committed very, very serious terrorism crimes and they are now incapacitated for a period as a result of their convictions. That assistance was extraordinary, Your Honor.

You know, we use the term "substantial". This is well beyond substantial. And for that reason, the government has made its 5K1.1 motion to allow the Court in its discretion to sentence the defendant well below the applicable guidelines.

Now, I also, you know, sort of listening to Mr. Marinaccio speak earlier this morning about sort of the change in the defendant over time from January 2010 to where he stands today.

You know, I've had the opportunity, Your Honor, to speak, in fact, at the Court's request with former prosecutors and case agents who have worked with Ahmedzay since 2010. And, in fact, in the audience today, Your Honor, are former

FBI agents who are now retired but who worked with the defendant at the time of his arrest who have come to show their support.

And what Mr. Marinaccio described is very similar to what they told me with respect to Ahmedzay's realization over time regarding his conduct and the individual he used to be and what they have said, Your Honor, is that he has expressed incredible contrition and remorse and completely disavowed the person that he used to be.

Now, we've also been working, Your Honor, recognizing that there will be a time when Ahmedzay is released and we, the U.S. Attorney's Office, the FBI, also the Probation Department, as well as some private sector partners of the U.S. Attorney's Office to craft a reentry plan for the defendant.

We have spoken with him about his plans, and while I don't want to, you know, give the specifics in, you know, open an courtroom, he does have very concrete ideas about, you know, where he's going to live, what he's going to do for employment, both short term and what he aspires to do long term; you know what education he wants to achieve, given that he never completed his college degree, and these are things that we, the U.S. Attorney's Office and the FBI, have worked with him on and will continue to work with him on past his eventual release.

PROCEEDINGS                                    14

I do want to -- I'm happy to take any questions from the Court. I did want to be heard on some supervised release conditions, if this is the appropriate time for, or if you want me to hold that.

THE COURT: Earlier this morning I did confer with the probation officer regarding supervised release conditions. I'm happy to hear what you have to say.

Mr. Pravda, go ahead.

MR. PRAVDA: Oh.

So, Your Honor, we are asking for a lifetime supervised release. And we do that not so much because we think the defendant needs it, but because we want to make sure that the resources are available to him, should there come a time that he needs to rely on those resources.

We would also ask that the Court impose, subject to the discretion of the Probation Department, a condition for mental health treatment and threat assessment counseling. Again, not because the government has any reason to believe right now that Ahmedzay needs that, but just because, should the Probation Department determine while they're supervising him that he could benefit from that in the future, we want that to be available to him.

And then we also ask that, even though I think we can count on his ongoing cooperation, that that be made a condition of his supervised release as well.

PROCEEDINGS 15

THE COURT:  Do any of your agents wish to say anything?

I don't want to put anybody on the spot, but if anybody has anything to say, I'm happy to hear them.

MR. PRAVDA:  No, Your Honor, they've indicated that they -- I think, they're satisfied with the presentation that I made to the Court.

THE COURT:  All right.

Well, Mr. Ahmedzay, what would you like to say, sir?

THE DEFENDANT:  I got a written statement, Your Honor.

THE COURT:  Okay.  I have your letter, which I read a number of times, I'm happy to hear you.

THE DEFENDANT:  Thank you, Your Honor.

I want to thank the Court, and the U.S. Attorney's Office for giving me this opportunity to be here today.

First and foremost, I want to apologize for my actions, for my crimes, and the path that I took.

I'm ashamed to say that I associated myself with people who use Islam to justify the terrorism against innocent people.  They claim to be defending Islam, but how can you follow the basic principles of something and still claim to be defending them.  So there's absolutely no justification or excuse for it.

Sadly, however, at one point in my life I was young,

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS

16

naive, and stupid enough to justify it.  I thought I was part of something that will bring about a greater good, that will bring peace to save lives.

I was manipulated, deceived and completely brainwashed.  I know now I was wrong.  I made a mistake and I'm doing everything I can to make up for that mistake.  My cooperation with the government was the first step in a long road to my rehabilitation.  And I'm proud to say that it was the best decision that I ever made.

Once removed from the environment, the bad influences and this altered reality that I created for myself, I knew I could become the man that I was before I took this senseless path.  The man who loved the City.  The man who wanted to become a first responder and took the New York City firefighter's exam.  The man who attended college to become a New York City school teacher and work with the youth.  The man who had dreams.  Your Honor, I'm asking you to give me the opportunity to pursue those dream.  I'm asking for your mercy and your leniency.  Thank you.

THE COURT:  Thank you, sir.

Well, as you all are undoubtedly aware, I've given this all a lot of thought, conferred with colleagues.  My office had reached out to all counsel to address what I think is the critical issue here.  The 5K1 documents elaborately, generously, maybe even excessively, I don't know, your

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

cooperation in unqualified terms.

So consideration, yes, you're entitled to consideration.  You made a deal.  You lived up to your obligations in A-plus fashion.  So you're entitled to consideration, as Mr. Marinaccio puts it.

But the critical issue for me and for all of us is trust.  That's why I reached out to counsel.  I realize that the assistance in the case, the agents in the case spend more time with you than anybody else, and no doubt have a better sense as to the legitimacy of your claim of reversion, redemption, and I needed to hear it from them.

I don't like the person you were either.  None of us does.  And if in a perfect world I can have absolute assurance that you will never return to that person, this would be rather easy.  But there are no such assurances.

And I have to tell you, looking at the file and thinking about it, one of the things that strikes me about your case and your codefendant's case, here you are you're living a good life with a supportive family.  You're attending college.  You're three quarters of the way through it; doing all the right things, working, and you're living an upstanding life to be proud of.  And what seemed like all of a sudden you turned into a monster.  If you can turn that fast on the down side, I have to worry that you can return that fast on the down side.

You've earned the trust, it's apparent, of the folks you worked with.  I take seriously Mr. Marinaccio's view of you, who are you today.  He appears before me regularly.  He, as an officer of the court, has earned my respect.  But still there is that lingering doubt that makes me quite uncomfortable, I have to tell you.  I have to tell you.

I read your plea allocution.  Not your finest moment.  That's a long time ago, I grant you, but it gives me pause.  Because I don't want you to think that the implementation of this contract was a simple matter.  But you have earned the trust, I guess it's a fair measure.  You've earned the Court's trust and you certainly delivered on your end of the bargain.

You have a family that supports you.  I see them in the back.  You have children.  You have a wife.  You have so many things to live for.  Don't violate that trust in them, in the government, in yourself.  Don't violate that trust.

I'm going to impose concurrent sentences on each of the three counts of ten years' imprisonment.  Lifetime supervised release.  That subject can be revisited by the Court from time to time, in consultation with the Probation Department.

And I'm going to impose a number of special conditions to supervised release, which I will, if appropriate with probation's recommendation, reconsider from time to time.

PROCEEDINGS                                    19

But number one, you'll participate in a mental health program approved by the Probation Department, and to the extent you are able, contribute to the cost of that service.

You'll maintain full-time, verifiable employment, or pursue a course of a trade and study, or any combination of the two, to the Court's satisfaction.

I'm imposing a search condition; that includes electronic communications and data, and you are to cooperate with the Probation Department in their implementation of that condition.

You're not to associate with anyone in any way, by person, mail, internet, or otherwise, affiliated with a terrorist organization or of terrorist views.

You're not to access websites that affiliate with radical extremist groups or organizations.

And as I said, you'll cooperate with the Probation Department's computer and internet monitoring program throughout the course of your supervised release. And you'll continue to comply, as you have, with the terms of your cooperation agreement.

One hundred-dollar special assessment on each of the three counts.

And unless there's something else, Mr. Pravda, I think you have an application.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                    20

MR. PRAVDA:  Yes, Your Honor.

So in the case 10-CR-19, both in the underlying indictment and open counts, so at this time we move to dismiss those.

THE COURT:  The application is granted.

MR. PRAVDA:  And in addition, the defendant is also charged in 10-CR-18 with one count to material false statements, and I move to dismiss that as well.

And I have an order, if the Court wishes, for the Court to sign.

THE COURT:  The application is granted.  The order is signed.

Anything else?

MR. PRAVDA:  It may just be a formality, Your Honor, but if you could also advise the defendant to his right to appeal.

THE COURT:  So many times I had the opportunity to sound foolish.

But, Mr. Ahmedzay, if you think I've imposed an unreasonable sentence, you may seek to -- consistent with the terms of your plea agreement, you may seek to appeal my sentence or any aspects of it to a higher court.  Assuming you pursue such an avenue and you maintain your continued eligibility, the fees, including counsel fees, will be paid by the Court.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Good luck.

THE DEFENDANT:  Thank you very much.

THE COURT:  See this lady over here?  Second only to your wife, she's the most important woman in your life.  Make her an ally.

THE DEFENDANT:  Yes.

THE COURT:  Don't make her an enemy.

Fair enough?

THE DEFENDANT:  Yes.  Yes, Your Honor.

THE COURT:  Good luck.

MR. PRAVDA:  Thank you, Your Honor.

THE PROBATION OFFICER:  Thank you, Judge.

(Whereupon, the matter was concluded.)

                *    *    *    *    *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

s/ Linda D. Danelczyk                February 8, 2019

  LINDA D. DANELCZYK                          DATE